**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

| | |
|---|---|
| BILLIE JOANN HARMON,<br>on behalf of herself and all others similarly<br>situated,<br><br>     Plaintiff,<br> v.<br><br>FIFTH THIRD BANCORP,<br><br>     Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**CASE NO. 1:18-cv-402** |

Plaintiff, Billie Joann Harmon, on behalf of herself and all others similarly situated, sues Defendant, Fifth Third Bancorp, and alleges:

## INTRODUCTION

1. Historically, check cashers have operated as fringe bankers, exploiting low-income consumers who lack formal banking relationships with extraordinarily high fees. Check cashers, often located in storefronts in struggling neighborhoods, have succeeded financially because of the vacuum created by the absence of banks from these communities.

2. Fifth Third Bancorp ("5/3") has now gotten into the check-cashing business, and—true to the cash cashing industry's unsavory reputation—5/3 has done so in a high-fee manner that exploits low-income consumers' desperation to access their own funds.

3. Specifically, 5/3 aggressively markets a feature on its banking app that purports to make funds from checks available immediately. For this supposed privilege, 5/3 charges an "Immediate Funds Processing Fee" of between 2%-4% of the check's face value—well within the range of normal for the exploitative check cashing industry.

4. However, for at least the first $100 of any deposit, and often for more, the funds are already "immediately" available, pursuant to 5/3's own express Funds Availability Policy. In that policy, 5/3 promises to make the first $100 of a deposit made "in any manner" immediately

available. Thus, at least with respect to the first $100 of any deposit, 5/3 improperly charges low-income consumers a fee for a useless service: the provision of funds "immediately" that are already "immediately" available.

5. 5/3 is obligated by its own Funds Availability Policy to make the first $100 of check deposits immediately available *free of charge*. Yet it also charges its customers the Immediate Funds Processing Fee on the first $100 of the deposit when the "Immediate Funds" button is clicked on its app. And the app never tells those customers what 5/3 promised in its contract documents—that the first $100 of the deposit is immediately available free of charge.

6. The in-app disclosures are deceptive and ambiguous, and 5/3 never informs its accountholders that it is requiring them to pay for a service that is offered to all customers for free. The 5/3 disclosures make this truth clear to accountholders.

7. For each deposit made on the 5/3 app with "Immediate Funds Availability," 5/3 charges between 2%-4% of the total check amount, including on the $100 that would *already be made available immediately, free of charge*. That means, each Immediate Funds Availability Fee is $2-$4 higher than it should have been.

8. Plaintiff seeks redress for these unlawful practices that 5/3 perpetrates on its checking accountholders to increase fees. Plaintiff asserts this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated throughout the United States, for damages and other relief. Besides being deceptive, unfair, and unconscionable, the practices breach promises or implied covenants in 5/3's contracts and are deceptive.

9. Plaintiff and other 5/3 customers have been injured by 5/3's practices. On behalf of herself and the putative class, Plaintiff seeks damages and restitution for 5/3's breach of contract and violations of state statute. Additionally, Plaintiff seeks an injunction on behalf of the general public to prevent 5/3 from continuing to engage in its illegal and deceptive practices.

## PARTIES

10.     Plaintiff, Billie Joann Harmon, is a citizen and resident of the State of Kentucky and has had a checking account with 5/3 at a branch in Edgewood, Kentucky, at all times material hereto.

11.     5/3 is a Fortune 500 company and has bank locations throughout Ohio, Kentucky, Indiana, Michigan, Illinois, Florida, Tennessee, West Virginia, Pennsylvania, Missouri, Georgia, and North Carolina. 5/3's headquarters and principal place of business is in Cincinnati, Ohio. Among other things, 5/3 is engaged in the business of providing retail banking services to consumers, including Ms. Harmon and members of the putative classes. 5/3's Registered Agent in Ohio is Corporation Service Company located at 50 West Broad Street, Suite 1330, Columbus, OH, 43215.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than 5/3.

13.     5/3 regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to its customers, including Plaintiff and members of the putative classes.  5/3 also maintains its registered agent and Corporate headquarters in this district. As such, it is subject to the jurisdiction of this Court.

14.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because 5/3 is subject to personal jurisdiction in this Court and regularly conducts business within this district through its corporate headquarters and multiple branches located within this district.  In addition,

a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## OVERVIEW

### I. Depositing Checks by Mobile Device

15.     Mobile remote deposit capture (MRDC) is a relatively new technology that enables consumers to deposit checks to a checking account using a mobile device with an Internet connection and a camera.

16.     To initiate MRDC transactions, consumers use a mobile banking application (app) to take photos of the front and back of endorsed paper checks and then submit the images to their banks through the app.

17.     MRDC is important to banks because of the cost savings it provides compared with traditional check-processing methods.[1] Roughly half of bank customers reduce their number of branch visits after adopting mobile banking.[2] And if "banks can take out costs in the processes that handle routine transactions, *they will be able to serve mass segments more profitably*."[3] This is because of the high cost of processing routine transactions, like check deposits, at bank branches.

---

[1] Maria Aspan, "Secrets of Mobile Success: Cost-Cutting Banks Seek Smartphone Customers," American Banker, Jan. 25, 2013, http://www.americanbanker.com/issues/178_18/secrets-of-mobile-success-cost-cutting-banks-seek-smartphone-customers-1056186-1.html?zkPrintable=1&no.

[2] Gerard Du Toit and Beth Johnson, "Integrating Mobile and Branch Banking Will Increase Customer Loyalty," American Banker, Dec. 12, 2012, http://www.americanbanker.com/bankthink/integrating-mobile-and-branch-banking-will-increase-customer-loyalty-1055089-1.html.

[3] *Id* (emphasis added).

18.     MRDC attracts the particularly vulnerable population of individuals that use check-cashing storefronts, especially if an account offers MRDC with immediate access to funds.[4]

## II. Fifth Third Capitalizes on MRDC and Immediate Access to Funds

19.     In February 2016, 5/3 publicly announced it was launching an effort to lure as customers the "unbanked or underbanked."[5] 5/3 admitted that the "unbanked or underbanked" typically don't have enough money for a bank account or are unable to open a bank account due to past problems. 5/3 also admitted that the "unbanked or underbanked" use "non-bank alternatives such as check cash centers to cash checks, make payments and get cashier's checks."[6] Fifth Third acknowledged that it served "some of the highest underbanked markets in the country, including Kentucky, Florida and North Carolina."[7]

20.     The product that 5/3 announced in February 2016 was Express Banking, a type of checking account that was supposed to "provide[] a way for people to manage their money with no monthly service charge, balance requirement or overdraft fees."[8]

21.     To seize on the importance of MRDC and access to funds on payday to the "unbanked and underbanked," 5/3 announced that check deposit through the consumers' mobile device with funds available in minutes was a feature of Express Banking.

---

[4] Center for Financial Services Innovation, "Reaching Underbanked Consumers Through Mobile Services" (August 2011), http://www.cfsinnovation.com/sites/default/files/ CFSI_mobile_august2011-Finalpdf.pdf.
[5] *Fifth Third Launches Express Banking® to Serve the Unbanked and Underbanked*, Feb. 15, 2016, https://www.53.com/content/fifth-third/en/media-center/press-releases/2016/press-release-2016-02-15.html.
[6] *Id.*
[7] *Id.*
[8] *Id.*

22.     5/3 also makes MRDC available to all other checking and savings account customers, including Essential Checking, which is the checking account that the vast majority of 5/3 customers are enrolled in.

**A.      5/3 Discloses No "Immediate Funds Processing Fee" in its Terms and Conditions Applicable to All 5/3 Checking and Savings Accounts**

23.     5/3's Deposit Account Rules & Regulations applies to all 5/3 checking accounts and it contains some additional information for the "unbanked or underbanked" customers enrolled in Express Banking.

24.     The "Funds Availability" section of 5/3's Deposit Account Rules & Regulations that is applicable to all 5/3 consumer checking and savings accounts provides that "[o]nce deposits are available, you can withdraw the funds in cash, and we will use the funds to pay transactions you have initiated. . . . Please note the manner in which you make your deposit and cut-off times can impact funds availability." (Deposit Account Rules & Regulations, at Page 11, a true and correct copy of which is attached as Exhibit 1.)

25.     The "Funds Availability" section of 5/3's Deposit Account Rules & Regulations that is applicable to all 5/3 consumer checking and savings accounts then provides a funds availability chart:

| Immediately* | Same Business Day | Next Business Day |
|---|---|---|
| Available for same-day cash withdrawals and purchases. Available to pay checks, withdrawals, purchases, and cover any items that may post to your account that night. | Available to pay checks, withdrawals, purchases, and cover any items that may post to your account that night. Available for next-day cash withdrawals. | Available for next Business Day cash withdrawals, and to pay checks and items that may post to your account the next night. |
| **Cash**<br>• Cash deposited at a Fifth Third Banking Center or Fifth Third ATM<br><br>**Transfers**<br>• Transfers from a Fifth Third account made at a Banking Center.<br>• Transfers from a Fifth Third account made at a Fifth Third ATM before 7:00 p.m. ET.<br>• Transfers from a Fifth Third account made through Online Banking, Mobile Banking, or our Automated Telephone Customer Service Line before 9:00 p.m. ET.<br><br>**Checks**<br>• Mobile Deposits, using Fifth Third's "Immediate Funds" Service, made before 11:59 p.m. ET.<br>• Checks converted to cash via Fifth Third Cash Access and deposited at a Banking Center.<br>• Personal Accounts: $100 of your total check deposits made in any manner (Banking Center, ATM, Mobile Deposit using standard availability service).<br><br>**Electronic Direct Deposits**<br><br>**Wire Transfers** | **Transfers**<br>• Transfers from a Fifth Third account made at a Fifth Third ATM after 7:00 p.m. ET.<br>• Transfers from a Fifth Third account made through Online Banking, Mobile Banking, or our Automated Telephone Customer Service Line after 9:00 p.m. ET.<br><br>**Checks**<br>• Personal Accounts: Remaining funds of Fifth Third checks deposited in any manner (Banking Center, ATM, Mobile Deposit using standard availability service). | **Checks**<br>• **Personal Accounts:** Remaining funds of non-Fifth Third checks deposited in any manner (Banking Center, ATM, Mobile Deposit using standard availability service).<br>• **Business Accounts:** $200 of total check deposits made in any manner (Banking Center, ATM, Mobile Deposit); remaining funds will be available on the second Business Day after we receive the deposit.<br><br><br><br><br>**Longer Delays May Apply**<br><br>**See STEP 3 for circumstances where delays may impact the availability of your deposits.** |

*Note: Cut-off times are specified as Eastern Time Zone (ET). Deposits made in a different time zone after the cut-off times listed above will not be immediately available.

(Ex. 1 at Page 11.)

26. Again, the first $100 of deposits made "in any manner" are available immediately, with no cost or fee whatsoever.

27. Next, in the "Pricing & Services Applicable to Consumer Deposit Accounts" portion of 5/3's Deposit Account Rules & Regulations, 5/3 lists the fees applicable to all of its consumer checking and savings accounts. (Ex. 1 at Page 25–26.) There is no "Immediate Funds Processing Fee" disclosed on the chart. (Ex. 1 at Page 25–26.)

28. In the "Processing Policies" portion of the fee chart, for "Funds Availability Policy," the consumer is simply "refer[red] to the 'Funds Availability' section of this booklet." (Ex. 1 at Page 26.)

29. *However, no Immediate Funds Processing Fee is disclosed in the "Funds Availability" section of 5/3's Rules and Regulations.* (*See* Ex. 1 at Page 9–12.)

30. The exact same disclosures, and lack thereof, are made in 5/3's Fee Disclosure Statement, a true and correct copy of which is attached as Ex. 2.

31. Therefore, no Immediate Funds Processing Fee is disclosed in 5/3's Fee Disclosure Statement that is applicable to all checking and savings accounts at 5/3.

32. Similarly, 5/3's Digital Services User Agreement & Electronic Communication Disclosures document, which is only made available online or through the mobile app, "govern[s] the use of Fifth Third Digital Services which include, without limitation, Online Banking, Mobile, and Bill Payment services." (Digital Services User Agreement & Electronic Communication Disclosures (e-Sign Consent Agreement), at Page 1, a true and correct copy of which is attached as Ex. 3.)

33. However, the Digital Services User Agreement also provides that "Digital Services provided by Fifth Third are additionally governed by any other separate agreement(s) you may have with Fifth Third . . . including, but not limited to, Rules and Regulations." (Ex. 3 at Page 1.)

34.     The Digital Services User Agreement also states that "[s]ome of the Digital Services *may* have fees associated with them that are not included in the Fifth Third Bank Rules and Regulations Applicable to All Accounts or Terms and Conditions Applicable to Express Banking. Information regarding such fees will be included within the applicable service. Please review such fees prior to engaging in a transaction." (Ex. 3 at Page 5 (emphasis added).)

35.     The Digital Services User Agreement also states that "[a] service fee *may apply* for Immediate Funds. We *may not* charge for checks under a certain dollar amount. Fifth Third does not charge a service fee for using the standard Mobile Deposit process." (Ex. 3 at Page 6 (emphasis added).)

36.     The Digital Services User Agreement also states that "[t]he fee, *if any*, is based on the amount of the check and the check type. (Ex. 3 at Page 6 (emphasis added).)

37.     No Immediate Funds Processing Fee is disclosed in 5/3's Digital Services User Agreement, which is only available online and which by its own terms doesn't impact the applicability of 5/3's Rules and Regulations (which, as set forth above, also do not disclose an Immediate Funds Processing Fee applicable to all checking and savings accounts).

38.     For users of Essential Checking and checking account products other than Express Banking, then, the only disclosures regarding Immediate Funds Processing Fee is provided in 5/3's app.  And those disclosures are false and misleading, as discussed below.

**B.      5/3 Discloses No Immediate Funds Processing Fee In Its Mobile App "Disclosures" Applicable to All 5/3 Checking and Savings Accounts**

39.     5/3's Mobile App only makes the following information available if the consumer clicks on a "Check Deposit Terms & Conditions" link at the bottom of the mobile app:

**Immediate Mobile Deposit Cutoff Times & Funds Availability**

- **Deposits made before 8:00 PM Eastern Time:** Immediately available to make purchases, withdrawals, and cover any items that may post to your account that evening, such as utility or other electronic payments.

- **Between 8:00 PM and 9:00 PM Eastern Time:** Immediately available to make purchases, withdrawals, and cover any items that may post to your account that evening, such as utility or other electronic payments. *The deposit transaction will reflect on your account statement as occurring on the following business day.*

- **After 9:00 Eastern Time:** Immediately available to make purchases and withdrawals; however, the funds deposited will not be available to cover any items that may post to your account that evening, such as utility or other electronic payments.

(emphasis in original.)

40.     The link containing the above information is only displayed after the customer has taken a picture of the front and back of the endorsed check and selected the 5/3 account the check funds are to be deposited into.

41.     Also at this time the 5/3 mobile app displays an "Immediate Funds" option where the customer only has to click a single button supposedly to gain immediate access to their own funds that are being deposited.

42.     At that time, 5/3 also displays the amount of the Immediate Funds Availability Fee for the first time.

### C.     5/3 Fails to Disclose That It Promised to Make the First $100 Immediately Available Free of Charge

43.     The "Terms & Conditions Applicable to Fifth Third Express Banking®" portion of 5/3's Deposit Account Rules & Regulations, states that "[c]hecks can also be deposited via Mobile Deposit using Fifth Third's 'Immediate Funds' Service. Applicable fees will apply. These fees are listed in the 'Express Banking Pricing & Services' section of this booklet." (Ex. 1 at 17.)

44. 5/3 then lists "Express Banking Tier Pricing – effective through April 13, 2018" for "Mobile Deposit Using Fifth Third's 'Immediate Funds' Service":

|  | Tier 1 | Tier 2 | Tier 3 |
|---|---|---|---|
| Payroll, Government, and Non-Personal Checks | 2.00% | 1.50% | 1.00% |
| Personal Checks | 4.00% | 3.00% | 2.00% |

45. 5/3 then lists "Express Banking Tier Pricing – effective beginning April 14, 2018" for "Mobile Deposit Using Fifth Third's 'Immediate Funds' Service":

|  | Tier 1 | Tier 2 | Tier 3 |
|---|---|---|---|
| Payroll, Government, and Non-Personal Checks | 2.00% | 2.00% | 1.00% |
| Personal Checks | 4.00% | 4.00% | 3.00% |

46. The Immediate Funds pricing charts never state what the 2%-4% is applied against—in other words, what the 2%-4% is *taken from*. Nor does 5/3 provide the basis of the calculation that would allow accountholders to determine how the Fee amount is determined.

47. The Immediate Funds pricing charts also never state that 5/3 already promised to make the first $100 of a deposit made "in any manner" immediately available free of charge.

**III. 5/3's Immediate Funds Processing Fee Violates the Terms of 5/3's Own Contracts.**

48. 5/3's Immediate Funds Processing Fee is charged to all customers that use mobile deposit and click "Immediate Funds" at the time of deposit. That fee is up to 4% of the amount of the check.

49.     5/3 charges all of its customers the up to 4% of the amount of the check fee as an Immediate Funds Processing Fee on the first $100 of the check deposit, even though 5/3 already promises in other contract documents to make such funds immediately available *for free*.

50.     Facially, it violates 5/3 contract promises to charge for a service (the immediate provision of the first $100 of a deposit) that it has already promised to provide for free.

51.     Moreover, the Immediate Funds Fee pricing charts that are made available to certain consumers should be reasonably understood to be stating that a 2%-4% fee will be assessed for access to funds *that would not otherwise be immediately available for free.*

52.     Moreover, such a Fee is deceptive, as no consumer would agree to pay a fee for a service that is already free.

53.     Rather than asking if an accountholder would like to pay extra to allow for amounts *over* $100 to be immediately available, 5/3's mobile app merely has an "Immediate Funds" button for the consumer to click after the check picture has been uploaded and the account for deposit selected.

54.     If 5/3 truthfully asked if its customers would like to pay up to 4% on the amount of the check deposit when 5/3 is required to make the first $100 of that deposit immediately available free of charge, reasonable consumers wouldn't click the "Immediate Funds" button to pay a charge for something they would receive free otherwise.

55.     5/3 deceives its accountholders and fails to disclose to them in any of its contracts and on the mobile app that certain of the funds will be available immediately even without paying for immediate access to the funds.

**IV. 5/3 Charges Plaintiff Immediate Funds Processing Fees**

56.     Ms. Harmon utilizes 5/3's Essential Checking account product, and therefore, 5/3 never disclosed to her an Immediate Funds Processing Fee in her deposit agreement or other account documents.

57.     Ms. Harmon was charged the following Immediate Funds Processing Fees by 5/3:

| Date | Amount of Fee | Amount of Check | Percentage of Check Amount |
|------|---------------|-----------------|----------------------------|
| 3/8/18 | $2.60 | $130.00 | 2% |
| 3/23/18 | $2.00 | $100.00 | 2% |
| 3/29/18 | $2.00 | $100.00 | 2% |
| 5/11/18 | $9.24 | $308.00 | 3% |
| 5/25/18 | $5.94 | $198.00 | 3% |

58.     Had 5/3 complied with its contractual promises, and made the first $100 of all deposits available free of charge, these are the Immediate Funds Processing Fees that should have been charged:

| Date | Amount of Fee | Amount of Check | Percentage of Check Amount |
|------|---------------|-----------------|----------------------------|
| 3/8/18 | $0.60 | $130.00 | 2% |
| 3/23/18 | **$0.00** | $100.00 | 2% |
| 3/29/18 | **$0.00** | $100.00 | 2% |
| 5/11/18 | $6.24 | $308.00 | 3% |
| 5/25/18 | $2.94 | $198.00 | 3% |

59.     In violation of contractual promises to make the first $100 of all deposits available immediately, free of charge, 5/3 charged Ms. Harmon an Immediate Funds Processing Fee on the first $100 of her mobile check deposits.

60.     Moreover, Plaintiff would not have clicked "Immediate Funds" on 5/3's mobile app if 5/3 had truthfully disclosed a) the manner in which it calculated the fee; and b) the fact that it was   assessing the percentage fee on amounts it was already obligated to make immediately available free of charge.

## CLASS ALLEGATIONS

61.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

62.     5/3's contract with all class members provides "[t]he laws of the United States and the State of Ohio govern this Agreement regardless of the Customer or User's place of residence and all transfers are agreed to be originated within the State of Ohio. Customer and User hereby consent to service of process, personal jurisdiction and venue in the state and federal courts in Cincinnati, Ohio and Hamilton County, Ohio, and select such courts as the exclusive forum with respect to any action or proceeding . . . ." (Ex. 1 at Page 22.) Accordingly, class-wide application of Ohio law is appropriate for the contractual claims asserted by Plaintiff and the Nationwide Class.

63.     The proposed classes are defined as:

> All 5/3 checking and savings account holders who, within the applicable statute of limitations, were charged an Immediate Funds Processing Fee on the first $100 of a check deposit made on 5/3's mobile app (the "Nationwide Class").

> All 5/3 checking and savings account holders in the Commonwealth of Kentucky who, within the applicable statute of limitations, were charged an Immediate Funds Processing Fee on the first $100 of a check deposit made on 5/3's mobile app (the "Kentucky Class").

64.     Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.  Excluded from the classes are 5/3, its subsidiaries and affiliates, its officers, directors and member of their immediate families and any entity in which

defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

65.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

66.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

67.     *Numerosity under Fed. R. Civ. P. 23(a)(1)*.  The members of the Classes are so numerous that separate joinder of each member is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained through 5/3's records. 5/3 has the administrative capability through its computer systems and other records to identify all members of the Classes and the amount of Immediate Funds Processing Fees paid by each Class member, and such specific information is not otherwise available to Plaintiff.

68.     *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Classes relating to 5/3's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members.  The common questions include, but are not limited to:

   a)      Whether 5/3 charges Immediate Funds Processing Fee on the first $100 of a check deposit on its mobile app;

   b)      Whether 5/3 is permitted by its contract to charge an Immediate Funds Processing Fee on the first $100 of a check deposit made on its mobile app;

   c)      Whether 5/3 improperly charged Immediate Funds Processing Fees on the first $100 of check deposits made on its mobile app;

   d)      Whether 5/3 developed and engaged in an unlawful practices that mischaracterized or concealed its true Immediate Funds Processing Fees practices;

15

e)      Whether charging the Immediate Funds Processing Fee on the first $100 of a check deposit breaches the covenant of good faith and fair dealing;

f)      Whether 5/3's practices violate the Kentucky Consumer Protection Act; and

g)      Whether Plaintiff and other members of the Classes have sustained damages as a result of 5/3's assessment and collection of the Immediate Funds Processing Fees, and the proper measure of damages.

69.      *Typicality under Fed. R. Civ. P. 23(a)(3)*.  Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by 5/3, as described herein.

70.      *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*.  Plaintiff is an adequate representative of the Classes in that she has a 5/3 checking account and has suffered damages as a result of 5/3's assessment and collection of Immediate Funds Processing Fees.  In addition:

a)      Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)      There is no hostility of interest between Plaintiff and the unnamed Class members;

c)      Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

71.      *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Classes as set forth in the "commonality" allegation above predominate over any

individual issues. As such, the "commonality" allegations (paragraph 65 and subparts) are restated and incorporated herein by reference.

72. _Superiority under Fed. R. Civ. P. 23(b)(3)._ A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of 5/3 are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and 5/3's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract)
#### (On Behalf of the Nationwide Class)

73. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

74. Plaintiff and 5/3 have contracted for bank account deposit, checking, ATM, and debit card services, which provide that those contracts are governed by the law of Ohio. (Ex. 1.)

75. 5/3 breached promises included in the account documents as described herein.

76. Plaintiff and members of the Nationwide Class have performed all, or substantially all, of the obligations imposed on them under the contract.

77.     Plaintiff and members of the Nationwide Class have sustained damages as a result of 5/3's breach of the contract.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of the Nationwide Class)**

78.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

79.     Plaintiff and 5/3 have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in contract documents, which provide that those contracts are governed by Ohio law. (Ex. 1.)

80.     Under the law of Ohio, good faith is an element of every contract pertaining to the assessment of Immediate Funds Processing Fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

81.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

82.     5/3 has breached the covenant of good faith and fair dealing in the contract through its Immediate Funds Processing Fee policies and practices as alleged herein.

83.     Specifically, 5/3 harms consumers by abusing its contractual discretion in a number of ways which no reasonable consumer would anticipate.

84.     5/3 uses its contractual discretion to charge Immediate Funds Processing Fees on the full amount of mobile check deposits when 5/3 was already obligated to make the first $100 of any mobile check deposit immediately available free of charge.

85.     Plaintiff and members of the Nationwide Class have performed all, or substantially all, of the obligations imposed on them under the account documents.

86.     Plaintiff and members of the Nationwide Class have sustained damages as a result of 5/3's breach of the covenant of good faith and fair dealing.

**THIRD CLAIM FOR RELIEF**
**(Kentucky Consumer Protection Act, KRS § 367, *et seq*.)**
**(On Behalf of a Kentucky Class)**

87.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

88.     5/3 engaged in deceptive acts or practices relating to the imposition of Immediate Funds Processing Fees on consumers in violation of the Kentucky Consumer Protection Act, KRS § 367, *et seq*. ("KCPA").

89.     "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are [ ] declared unlawful" under the KCPA. KRS § 367.170. "[U]nfair shall be construed to mean unconscionable." *Id.*

90.     Plaintiff and Kentucky Class members are "person[s] who purchase[d] services primarily for personal, family or household purposes." KRS § 367.220.

91.     5/3 engaged in unfair, false, misleading, unconscionable, or deceptive acts or practices or otherwise violated KCPA by, among other things,  knowingly and intentionally employing a policy and practice of charging Immediate Funds Processing Fees on the first $100 of a deposit when 5/3 promised that those funds would be immediately available free of charge, and misrepresenting and failing to disclose its policy and practice of charging Immediate Funds Processing Fees on the first $100 of a deposit when 5/3 knew it promised to make those funds immediately available free of charge.

92.     5/3's conduct caused Plaintiff and the members of the Kentucky Class to suffer ascertainable losses in the form of improper Immediate Funds Processing Fees that, but for 5/3's unfair, false, misleading, unconscionable, or deceptive practices and policies described herein, would not have otherwise been imposed.

93.     Plaintiff and Kentucky Class members are entitled to damages, declaratory relief, injunctive relief, and attorneys' fees and costs. KRS § 367.220.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Classes demand a jury trial on all claims so triable and judgment against Defendant as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.     Declaring that Defendant's Immediate Funds Processing Fee policies and practices to be wrongful, unfair, and unconscionable;

C.     Ordering 5/3 to immediately cease the wrongful conduct set forth above and enjoining 5/3 from continuing to charge Immediate Funds Processing Fees and otherwise enjoining 5/3 from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.     Restitution of all Immediate Funds Processing Fees paid to 5/3 by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.     Actual and punitive damages in an amount to be determined at trial;

F.     Pre-judgment interest at the maximum rate permitted by applicable law;

G.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.     Granting such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  June 7, 2018                                  Respectfully submitted,


                                                     **s/ Alyson Steele Beridon**
                                                     Alyson Steele Beridon (0087496)
                                                     Attorney for Plaintiffs and Proposed Class
                                                     BRANSTETTER, STRANCH &
                                                     JENNINGS, PLLC
                                                     3142 Losantville Ave., Suite A
                                                     Cincinnati, OH 45213
                                                     Phone: (513) 381-2224
                                                     alysonb@bsjfirm.com


                                                     J. Gerard Stranch, IV, BPR #23045 (*pro hac*
                                                     forthcoming)
                                                     Benjamin A. Gastel, BPR #28699 (*pro hac*
                                                     forthcoming)
                                                     BRANSTETTER, STRANCH
                                                        & JENNINGS, PLLC
                                                     223 Rosa L. Parks Avenue, Suite 200
                                                     Nashville, Tennessee 37203
                                                     Phone: (615) 254-8801
                                                     Fax: (615) 255-5419
                                                     gerards@bsjfirm.com
                                                     beng@bsjfirm.com


                                                     Irwin B. Levin (*pro hac* forthcoming)
                                                     Richard E. Shevitz (*pro hac* forthcoming)
                                                     Vess A. Miller (*pro hac* forthcoming)
                                                     Lynn A. Toops (*pro hac* forthcoming)
                                                     COHEN & MALAD, LLP
                                                     One Indiana Square, Suite 1400
                                                     Indianapolis, IN 46204
                                                     Telephone: (317) 636-6481
                                                     rshevitz@cohenandmalad.com
                                                     vmiller@cohenandmalad.com
                                                     ltoops@cohenandmalad.com
                                                     *Pro Hac Vice Motions to be Filed*

                                                     *Counsel for Plaintiff and the Proposed
                                                     Classes*